## PURCHASER DECLARED A TRUSTEE UNDER THE BULK SALES ACT.

Common Pleas Court of Cuyahoga County.

THE MOLLEN, THOMPSON & JAMES COMPANY v. B. KLEIN ET AL.

Decided, March 22, 1917.

*Bulk Sales—Ohio Act Analagous in Principle to Both the Common Law and Precedent—Privilege of Applying for Order Declaring the Purchaser a Trustee—Open to Any Creditor—Purchaser Not Protected Who Relies on Oral Statement by Seller that He Has No Creditors.*

1. The bulk sales statute must be strictly construed in favor of the unpaid seller of merchandise.
2. The right to make application, within ninety days after the sale, for an order declaring the purchaser a trustee accountable to the creditors of the seller is not limited to creditors named in the list furnished to the purchaser by the seller, but is open to any creditor whether his name is included in said list or not.
3. It is the duty of the purchaser to demand and of the seller to furnish a statement under oath showing the exact condition of his business with the names of all creditors, and a purchaser who permits himself to be put off with an oral statement to the effect that he has no creditors is without protection under the statute.

*M. C. Portman,* for plaintiff.
*Julius C. Preyer,* contra.

FORAN, J.

This is an action brought under the "bulk sales" act, passed by the General Assembly of this state April 18, 1913, and approved May 5, 1913. (103 O. L., 462.)

By Section 1 of this act, Sections 11102 and 11103 of the General Code were amended, and Section 11103 was supplemented by the enactment of the section known as Section 11103-1. Section 11102, General Code, as thus amended, reads as follows:

"The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fix-

tures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferrer or assignor, shall be void as against the creditors of the seller, transferrer, assignor, unless the purchaser, transferree or assignee demands and receives from the seller, transferrer or assignor a written list of names and addresses of the creditors of the seller, transferrer and assignor, with the amount of indebtedness due or owing to each and certified by the seller, transferrer and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee or assignee shall, at least five (5) days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally, or by registered mail, every creditor whose name and address appears in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof.''

By Sections 11103 and 11103-1 it is further provided that the sellers, under the act, shall include individuals; and that any purchaser who shall not conform to the provisions of the act shall, at any time within ninety days after such sale, upon the application of any of the creditors of the seller, become a trustee to be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment.

Obviously, none but creditors of the seller at the time of the sale are entitled to the provisions of this act or to the remedies provided therein. The clear purpose of the act was or is to protect the unpaid seller of merchandise and goods. The theory of every normal sale of personal property is price as against delivery. But, as was said by Johnson, J., in *Steel, etc., Co. v. Miller*, 92 O. S., 121:

''It is a matter of common knowledge that the business of retail merchandising is conducted largely upon credit. This system came about as a natural outgrowth of the vast increase in the facilities of transportation and communication in modern times. It was not surprising that a system so built up and conducted should be attended with abuses, for it furnished an opportunity for the commission of fraud upon creditors not usual in other forms of business. There was a temptation to sell stocks

in bulk without providing for the payment of creditors from whom they were bought. It was natural and unavoidable that such an important subject should be called to the attention of the Legislatures and courts."

Having these facts in view, the General Assembly, on· April 4, 1902, passed an act entitled "An act to prevent fraud in the purchase, disposition or sale of merchandise." (95 O. L., 96.)

By Section 1 of this act it was provided that a sale or other disposition of an entire stock of merchandise in bulk or any portion of a stock of merchandise other than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be fraudulent and void as against the creditors of the seller, unless the seller, at least six days before such sale or other disposition, shall do certain things which are specifically provided for in the act. Among other things, it was provided that the seller should deliver to the purchaser a full and correct statement of the names, places and residences or places of business of each of his creditors, and the amount due to each; and that he should also deliver to the purchaser true and correct books or original invoices from which the cost price of the merchandise sold could be ascertained. And it was further provided that the seller and the purchaser, together, at least six days before the sale or other disposition, should make a full and detailed inventory showing the quantity and the cost price to the seller of each article to be included in the sale; and that this list of creditors, books, invoices and inventory should be retained by the purchaser for at least six months after the sale and be exhibited on demand to each creditor of the seller; and then the purchaser was required, at least five days before the sale or other disposition in good faith, to give notice of the proposed sale to each of the seller's creditors of whom the purchaser obtained knowledge or could obtain knowledge by the exercise of reasonable diligence, and this notice was to be given either personally or by registered letter properly stamped, directed and mailed.

This act was declared unconstitutional in *Miller* v. *Crawford*, 70 O. S., 203, for the reason that it is repugnant to the first

article of the Constitution, because it placed an unwarranted restriction upon the right of the individual to acquire and pos-sess property, and, further, because it contained a forbidden discrimination in favor of a limited class of creditors.

Subsequently, the Legislature, on April 30, 1908 (99 O. L., 241), passed an act which in all essential particulars is substan-tially similar to the language now under consideration or the act under which this action is being prosecuted. This act is sub-stantially embodied in Sections 11102, 11103 and 11104, G. C.

In *Williams & Thomas Co.* v. *Preslo,* 84 O. S., 328, this act was also declared unconstitutional for the reason that it is re-pugnant to the first article of the Constitution and therefore void, and *Miller* v. *Crawford,* 77 O. S., 203, was approved and followed.

The constitutional convention of September, 1912, however, amended Section 2 of Article XIII, relating to the classification of corporations, and at the end of the section these words were added: ''Laws may be passed regulating the sale and convey-ance of other personal property, whether owned by a corporation, joint stock company or individual.''

In *Steele, etc., Co.* v. *Miller,* 92 O. S., 115, it is provided in the third part of the syllabus:

''The act of April 18, 1913, to amend Section 11102 *et seq,* General Code, relating to the transfer of stocks of merchandise and fixtures other than in the usual course of trade (103 O. L., 462), is a valid enactment not repugnant to the state or federal Constitutions.''

Long prior to the enactment of the statutes herein referred to, it was held by the courts of this state, including the Su-preme Court, in various decisions, that the unpaid seller of mer-chandise had a lien upon the goods sold if the sale was tainted by fraud.

The doctrine of stoppage *in transitu* is well known and need not be referred to here. Sales of merchandise purchased by a man in anticipation of insolvency, or who is actually insolvent, have always been held to be fraudulent and void, the courts even going so far as to hold that where one is purposely ignorant

of the extent of his property, he could not rely upon such ignorance for the purpose of raising an expectation of ability to pay for what he buys. He must be held to have a reasonable knowledge of the extent of his property, so that those dealing with him will not be defrauded by his recklessness and carelessness in business. And it has been held that it is not essential that a purchaser make any fraudulent representation when purchasing goods in order to render the contract of sale therefor void for fraud; want of reasonable expectation of ability to pay, which is the equivalent of an intent not to pay, being sufficient. See *Wilmot* v. *Lyon,* 49 O. S., 296, also *Talcott* v. *Henderson,* 36 O. S., 162.

We merely refer to this general principle of law for the purpose of indicating that the bulk sales act was primarily intended and designed to protect the unpaid seller of goods and merchandise. Similar acts have been passed by nearly all the states of the American Union, and all these acts may be said to be supplementary or related acts to the general sales acts, which are largely based on the English sales of goods act, passed in 1893.

The courts have always recognized a distinction between contracts generally and contracts for the sale of personal property. While it is true that a sale of goods is affected by contract, it must be remembered that a completed contract of sale of merchandise is something more, as it is a contract plus the transfer of goods. The essence of the sale involves a transfer of the property for a price, and therefore a contract of sale contemplates an absolute transfer of the goods agreed to be sold; and if the contract of sale be tainted with fraud, this absolute transfer of title does not take place, though the goods be in fact delivered and possession thereof parted with.

These sales acts are in large measure declaratory of the common and precedent law of sales of personal property. One underlying principle may be seen in all of them, and that is to protect the unpaid seller who has parted with the possession of his property, under contract express or implied, where the price is not paid upon delivery.

Referring now to the plaintiff's petition, we have no hesitancy in saying that it does not state a cause of action. No advantage,

however, was taken by the defendant of defects in the petition; and inasmuch as at the time the case was heard certain statements were made by counsel for the defendant which must be treated as admissions, the plaintiff will be given leave to amend his petition to conform to the evidence.

It was agreed by counsel at the time the case was presented to the court that the same should be tried and determined upon an agreed statement of facts. This statement of facts is now before us. A charitable criticism of this statement of facts would be that it is wholly defective, insufficient and characterized obviously by a glaring want of accuracy, conciseness and clarity of statement. From the statement of fact and the petition, however, and an admission in the answer, it appears that prior to December 10, 1914, the defendant, B. Klein, long conducted in the ordinary course of trade a retail grocery store in this city; and that on said 10th day of December, 1914, Klein, for the consideration of $1,500, sold, transferred and assigned, in bulk, and gave possession of the stock and merchandise of said store, together with fixtures, to the defendant, J. Kraus, otherwise than in the ordinary course of trade and not in the regular and usual prosecution of the retail grocery business. The petition states that the plaintiff is a creditor of B. Klein in the sum of $57.25, as evidenced by a judgment in the municipal court of Cleveland, obtained on the 20th day of January, 1915. There is no statement in the petition that the plaintiff was a creditor of B. Klein prior to the 10th day of December, 1914, the day on which the store was sold in bulk to the defendant J. Kraus; nor is there any statement, either in the petition of the plaintiff or the crosspetition of the O'Donohue, Knight & Gage Company, that no affidavit was furnished Julius Kraus by the defendant B. Klein. The defendant Julius Kraus, however, in his answer does say that, coincident with the sale to him in bulk of said grocery store of the defendant B. Klein, he did demand an affidavit setting forth the number and names of creditors and of the indebtedness of each so that he might notify them of this sale and transfer as required by law, "and at that time the defendant B. Klein did state that there were no creditors, and for that reason no affidavit was furnished."

We have here an admission by the defendant Kraus that no affidavit of any kind was furnished to him by the defendant B. Klein. The petition does not so state, nor does the agreed statement of facts. The agreed statement of facts says that at the time of the sale in bulk to Julius Kraus, "the said Kraus demanded of the defendant B. Klein a written list of the names and addresses of the creditors of said B. Klein for the amount of the indebtedness due or owing to each, and certified by B. Klein under oath to be a full and accurate list of the creditors and the amount of indebtedness to each. At that time he was verbally informed by the said B. Klein that there were no creditors, and no such written list of names and addresses of creditors, with the amount of indebtedness owing to each, was furnished said Julius Kraus by the said B. Klein; and the said Julius Kraus did not, at least five days before taking possession of or paying for such merchandise or fixtures, personally or in writing, notify any of the creditors of the transfer and sale in bulk of the said stock of merchandise and fixtures."

It therefore clearly appears that the defendant B. Klein, knowing he was indebted to various parties in the sum of about $750 on the 10th of December, 1914, on that day sold his store in bulk, and not in the regular and usual prosecution of business nor in the ordinary course of trade, and at the time he sold and transferred said store to the defendant Julius Kraus he informed the said Kraus that he had no creditors or that there were no creditors; and if this statement was true, of course it was not necessary for him to furnish the said Kraus with a written list of the names and addresses of creditors; and obviously he could not do so, for if there were no creditors there could be no names of creditors.

Taking this statute as we find it, and the legislation that preceded it, to which reference has been made, and the adjudications of our Supreme Court upon such legislation, it must be held, as has been already intimated, that the purpose of this law or this act was or is to protect the unpaid sellers of merchandise; that is, the unpaid creditors of the dealer who sells his business in bulk. The statute in express terms provides that the thing now required to be done, with respect to the sale of an entire

stock of merchandise other than in the usual or ordinary course of trade, is that the purchaser shall demand and the seller furnish, under oath, a complete and accurate list of his creditors and of the amount owing to each; and that the buyer shall, at least five days before the completion of the sale, notify each of the creditors and any others of whom he may have knowledge, personally or by registered mail, of the proposed sale and of the price, terms and conditions thereof.

That the construction to be given this statute is not forced we think is evident from the case of *Pittsburg Plate Glass Co. v. Ring,* decided by the court of appeals February 23, 1915. The defendant in that case purchased the entire stock of merchandise in bulk. He received from the seller a written list of names and addresses, which list, however, did not contain the name of the plaintiff in error, who was a creditor of the seller. The defendant in error notified in writing those whose names appear in the list, as the statute provides. The name of the plaintiff in error not being included in the list, it was not notified, and was not informed of the sale until some time after it was consummated. The defendant in error, that is, Saul Ring, paid the purchase price and took possession of the property within twenty-four hours of the time of the purchase. It was held by the court of appeals, Meals, J., that because Ring took possession of the merchandise before the expiration of five days from the date of the purchase, the defendant in error, Saul Ring, was subject to the provisions of the bulk sales act, and he was held to be a trustee of the goods purchased for the benefit of all the creditors. In speaking of the right of creditors to make application within ninety days after the purchase, and that the purchaser becomes a trustee, and to be held accountable to all the creditors, the court said :

"The right to make such application is not limited to the creditors named in the list by the seller, but is given to any creditor of the seller. So if the purchaser takes possession of the goods and pays therefor before the lapse of five days from the giving of the notice required by the statute, any creditor, whether named in the list or not, may make the application provided for in the statute."

In other words, the court of appeals held that this statute must be strictly construed for the benefit of the unpaid seller of merchandise.

It is said in the agreed statement of facts that, "at the time of and coincident with the sale in bulk of said grocery business, the said Julius Kraus did demand of the said B. Klein a written list of the names and addresses of the creditors of the said B. Klein." And it is admitted or stated that he did not, five days before taking possession of or paying for the merchandise or fixtures, notify any of the creditors of the sale to him. Of course, if there were no names of creditors furnished, it would necessarily follow that he could not notify creditors. This statement, taken in connection with certain statements informally made to the court by counsel for the plaintiff and the defendant, indicates that the defendant Julius Kraus took possession of the store immediately after the sale had been consummated. In other words, he did not wait five days for the purpose of notifying creditors because there were no creditors to be notified. When the matter was before the court it was not denied, if not expressly admitted, by the defendant Kraus that such possession was immediately taken. Therefore there was no compliance with the statute, and no valid sale or transfer of the property took place.

The query now arises, is this statute complied with where the seller verbally says to the purchaser, "I have no creditors; I do not owe any person and am not indebted to anybody at this time, therefore I have good right to sell and dispose of these goods"?

To answer this question in the affirmative would be to nullify this statute. It would open the door wide to fraud of the grossest kind. A man, in anticipation of insolvency, might select another as dishonest as himself and make such a statement, and the creditors would be wholly without remedy. If Julius Kraus was not a purchaser in good faith and for value, then, irrespective of the statute, he ought to be held to be the trustee of the creditors, or to hold the goods for their benefit.

Assuming, now, that Julius Kraus was acting in entire good

faith, what should he have done before he accepted these goods or paid for them?

We hold that he should have demanded from the defendant B. Klein a statement, under oath, of the exact situation and condition of his business; and that the statute must be construed to mean that such a statement, under oath, must be furnished to the buyer. If B. Klein stated verbally, as the agreed statement of facts says, to Kraus that he did not have any creditors, and that he did not owe anything upon the goods, Julius Kraus should have demanded that that statement be reduced to writing and be sworn to.

While the doctrine of *market overt* does not prevail in the United States, and while it may be said in general terms that there is no law recognizing the effect of sales in *market overt* in any of the United States, yet the doctrine of *caveat emptor* has a limited application in the United States, and a purchaser of personal property is under obligation to examine and judge for himself as to the title and quality of the goods purchased, unless he is persuaded from so doing by the representations of the seller; and if Kraus was acting in entire good faith, he should have demanded of the defendant Klein the statement provided for in the statute. As has been said, the statute would be a nullity and would wholly fail in its objects if a purchaser in bulk, not in the usual or ordinary course of trade, did not require of the seller a statement under oath as to the condition of the business. And when the statute provides that the purchaser must demand and receive from the seller a written list of names and addresses of creditors, "under oath, to be a full, accurate and complete list of his creditors and of his indebtedness," we think it necessarily follows that a statement under oath must be made; as it is the only protection the purchaser has; he is buying at his peril; he is the man who must beware and take notice of what he is doing. We think any other holding or any other construction of this statute would render the whole statute futile and nugatory. In saying this we are assuming, now, that the defendant Julius Kraus was acting in entire good faith. If he was not acting in good faith, and was in collu-

sion with the defendant B. Klein to defraud the creditors of B. Klein, then, of course, there was no valid sale to him, and he holds the goods as trustee for the benefit of the creditors of B. Klein.

The petition, of course, raises no such issue. Indeed, the petition does not state in exact terms that at the time of the sale to Julius Kraus the defendant B. Klein was indebted to the plaintiff. The statement in the petition is that he obtained a judgment in the municipal court on the 20th day of January, 1915, against the defendant B. Klein. This was forty days after the sale; and for aught that appears, the debt, claim or demand of the plaintiff against the defendant B. Klein might have arisen after December 10th, 1914. And the same may be said with respect to the cross-petition of the O'Donohue, Knight & Gage Company, as it seems that they obtained their judgment in the municipal court on the same day, that is, January 20, 1915.

In the interest of justice, however, we are inclined to hold that the plaintiff and the cross-petitioner may amend their pleadings to conform to the evidence before the court; and we are free to say that that evidence is not wholly contained in the agreed statement of facts, as that is as defective and as incomplete as the pleadings, but the pleadings and statement of facts are supplemented by statements made in open court admitting that the plaintiff and the cross-petitioner were creditors of the defendant B. Klein before he sold his grocery store, and that their debt and demand arose for goods and merchandise sold and delivered to B. Klein before the store was sold.

There is a statement in the agreed statement of facts to this effect: "That the said judgment and costs are now due and unpaid, and that the goods were purchased in the conduct of said grocery store by B. Klein."

We might hold, by construction, that this was intended to state that the judgment was for goods and merchandise sold to B. Klein before the sale of the store by him to the defendant Kraus, that is, before December 10th, 1914; but this is not the statement either in the petition or in the agreed statement of facts; and for aught that appears, it might be that B. Klein,

even after he sold the store to the defendant Julius Kraus, purchased the goods from the plaintiff and the cross-petitioner as the agent of Julius Kraus. But, as has been said, in the interest of justice, the plaintiff and cross-petitioner will be permitted to amend their pleadings to conform to the facts; and the plaintiff and cross-petitioner may have an order to the effect that the defendant Julius Kraus shall be held the trustee for the creditors, and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that came into his possession by virtue of the sale of December 10th, 1914; and that a receiver will be appointed to take possession of said goods.